No. 70,807

In the Matter of MARY CATHERINE JACKSON, *Respondent.*
(874 P.2d 673)

Opinion filed May 27, 1994.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam:* The respondent, Mary Catherine Jackson, is an attorney admitted to the practice of law in Kansas.

The Disciplinary Administrator alleged in Count I that respondent engaged in professional misconduct by having failed to provide competent representation to a client, MRPC 1.1 (1993 Kan. Ct. R. Annot. 258), act with reasonable diligence and promptness in representing the client, MRPC 1.3 (1993 Kan. Ct. R. Annot. 263), and keep the client reasonably informed or promptly comply with reasonable requests for information, MRPC 1.4 (1993 Kan. Ct. R. Annot. 267).

Count II alleged respondent violated her duty to comply with the requirements in holding property of clients or others, MRPC 1.15 (1993 Kan. Ct. R. Annot. 299), and knowingly disobeyed an obligation to the court, MRPC 3.4 (1993 Kan. Ct. R. Annot. 318). Count III consisted of allegations that she: failed to act with reasonable diligence, MRPC 1.3, failed to keep her client reasonably informed, MRPC 1.4, failed to properly safeguard property of her client, MRPC 1.15, represented a client in a matter respondent was not qualified to handle, MRPC 1.16 (1993 Kan. Ct. R. Annot. 304), and failed to make reasonable efforts to expedite litigation, MRPC 3.2 (1993 Kan. Ct. R. Annot. 313). Count IV involved all the charges under Count III as well as failing to provide competent representation, MRPC 1.1. Finally, Count V concerned allegations of failing to provide competent representation to the client, act with reasonable diligence, keep the client reasonably informed, and properly safeguard property, MRPC 1.1, 1.3, 1.4, and 1.15. In all counts, it was alleged respondent committed pro-

fessional misconduct and that she failed to cooperate with the Disciplinary Administrator. MRPC 8.4 (1993 Kan. Ct. R. Annot. 347); Supreme Court Rule 207 (1993 Kan. Ct. R. Annot. 170).

The matter was set for hearing by the Kansas Board for Discipline of Attorneys on June 23, 1993, at 9:00 a.m. However, the hearing did not convene until 10:30 a.m., at which time respondent appeared pro se. Respondent failed to state a reason for her failure to appear as ordered. The Disciplinary Administrator's motion to postpone the hearing on Count I until a later date was granted by the hearing panel. Count I is still pending and has not been considered by the court.

Joel Bradley Short, a member of the Johnson County Bar Association Ethics Committee appointed to investigate the five pending cases, testified that he wrote letters or sent facsimiles to respondent in each case to enlist her cooperation with the investigations. He stated that the only written reply from respondent was a request for an additional week in which to respond to the complaints. Mr. Short reached respondent by telephone on April 8, 1992, and July 9, 1992, and cooperation was promised on both occasions. Mr. Short did not receive a written response from respondent to any of the five pending complaints.

The Deputy Disciplinary Administrator, Stanton A. Hazlett, presented evidence in support of Counts II, III, IV, and V. At 4:45 p.m., the parties stipulated that respondent would testify in narrative format in reply to the four other cases, with brief cross-examination by Mr. Hazlett. The parties further stipulated that respondent would be allowed to supplement her testimony in the four cases by filing an affidavit. The stipulations were approved by the hearing panel and the hearing was adjourned at 6:40 p.m. All matters were taken under advisement. The hearing panel observed that respondent had failed to serve an answer to any of the formal complaints as required by Supreme Court Rule 211 (1993 Kan. Ct. R. Annot. 178) and that no affidavit or exhibits had been filed by respondent. The hearing panel made the following findings of fact.

### COUNT II—B5366

Respondent was appointed by the district court of Wyandotte

County, Kansas, in 1986, as conservator for her two children. Respondent had failed to file annual accountings since February of 1989. On September 13, 1991, and November 12, 1991, Judge Mikesic, the complainant, sent letters to respondent requesting accountings for the time period of February 15, 1989, through September 13, 1991.

On January 10, 1992, Judge Mikesic ordered respondent to appear at a hearing on February 5, 1992, at 9:00 a.m. to determine whether or not respondent should be replaced as conservator. Respondent failed to appear, call, or respond to the court's order for information concerning the conservatorship.

A show cause hearing was set for March 3, 1992. The notice of that hearing was served on respondent. When she appeared on March 3, 1992, respondent refused to answer the court's questions concerning the identity of the financial institutions where the conservatorship funds were deposited and failed to provide accountings. The court found respondent was in contempt and sentenced her to 30 days in jail. The sentence was stayed until March 17, 1992, to allow her to furnish the court with the accountings.

On March 17, 1992, respondent filed a notice of appeal of the order holding her in contempt. An appeal bond of $10,000 was set. The court granted respondent until March 27, 1992, to post a $10,000 appeal bond. The hearing was continued until April 7 to permit her to submit the accountings. Respondent did not post the appeal bond until June 10, 1992.

On March 30, 1992, Judge Mikesic advised respondent that the April 7, 1992, hearing was continued to April 8, 1992, at 3:00 p.m. On April 8, 1992, respondent failed to appear at 3:00 p.m. Respondent called the court at 3:30 p.m. and advised the judge that she would be late. During that conversation, she was told by the judge to appear on April 9, 1992, at 9:00 a.m. with the accountings. The respondent appeared on April 9, 1992, but did not have the accountings. She was then ordered by the judge to appear each day thereafter at 9:00 a.m. until further order.

On April 10, 1992, respondent again appeared at 9:00 a.m. without the accountings. The judge asked respondent the names

of the banks where the conservatorship funds were deposited. She refused to name the banks, stating that the funds were deposited in a number of banks. Respondent was directed to report to the court on April 13, 1992, at 9:00 a.m. On April 13, 1992, respondent appeared, but stated that she had brought the wrong file with her and had no reports to file. Respondent was then ordered to appear on April 14, 1992, at 10:30 a.m. and to bring her file with her. On April 14, 1992, respondent appeared as ordered, but without the accountings or her files. Respondent promised the court that she would turn the files over to another attorney on April 15, 1992.

On April 15, 1992, the court was contacted by attorney Annette Jackson, who advised that she was taking over the conservatorship case. Respondent appeared that day and indicated to the judge that she would turn her files over to Annette Jackson at noon on April 16, 1992. A hearing was set to review the status of the accountings on May 20, 1992. The judge notified Annette Jackson of the hearing dates.

The May 20, 1992, hearing was continued until June 10, 1992, at 9:00 a.m. On June 10, 1992, both respondent and Annette Jackson appeared in court. Annette Jackson informed the judge that respondent had failed to deliver the files and no accountings had been prepared. Respondent claimed that she did not want to incriminate herself and refused to divulge the identity of the bank where the conservatorship funds were deposited. Judge Mikesic ordered respondent to either post the $10,000 contempt appeal bond or surrender herself to the Wyandotte County sheriff to be incarcerated until purged of contempt. Respondent and Annette Jackson announced to the court that they were going to the clerk's office to post the contempt appeal bond.

On June 19, 1992, respondent filed a docketing statement and a request to stay pending the appeal with the Kansas Court of Appeals. Respondent was granted permission to docket the appeal out of time. A stay of the contempt order was granted by the Court of Appeals on June 30, 1992.

Respondent testified that she failed to appear in court on February 5, 1992, because she was pressed with other work. She ex-

plained these circumstances to Judge Mikesic at the hearing held on March 3, 1992. Respondent contended that she was late in filing accountings in one conservatorship but not the other. Respondent testified at length concerning the circumstances of her dispute with Judge Mikesic. During cross-examination by Mr. Hazlett, respondent was questioned as to the location of her children's funds. Respondent refused to answer the question and refused to invoke her Fifth Amendment right. Respondent contended that the existence of the Fifth Amendment made it unnecessary for her to answer questions on this topic posed by Judge Mikesic, the Deputy Disciplinary Administrator, or the hearing panel. The hearing panel directed respondent to answer the question or to decline to answer on grounds of self-incrimination. Respondent again refused to answer the question or to invoke the Fifth Amendment.

The hearing panel found that the respondent violated MRPC 1.15, 3.4, and 8.4 and Supreme Court Rule 207 in Count II of the formal complaint, case No. B5366. We note the contempt citation mentioned in Count II was subsequently reversed on appeal. *In re Conservatorship of McRoy*, 19 Kan. App. 2d 31, 861 P.2d 1378 (1993).

## COUNT III—B5422

The third complainant, Richard N. Moore, retained respondent in January 1992 to prepare legal documents necessary to incorporate a business enterprise. The complainant paid respondent a $350 retainer and advanced a $75 filing fee requested by respondent.

Respondent prepared documents and delivered them to the complainant on January 31, 1992. The complainant signed the documents and then returned them to respondent to be filed on February 3, 1992. Respondent never filed the incorporation documents, never paid the filing fee, and did not return any of the funds advanced by Mr. Moore.

Through the month of February, the complainant made numerous attempts to contact respondent about his paperwork. The complainant was only able to speak to respondent one time. On that occasion, respondent indicated to the complainant that the

papers would be in her office on February 14, 1992. After that date, the complainant attempted many more times to contact respondent about his paperwork but was unsuccessful. On March 2, 1992, the complainant left a message on respondent's answering machine informing respondent that she was fired and requesting a refund of the $425. Respondent never replied to this request.

Respondent testified that she prepared the Missouri incorporation documents but did not file them because Mr. Moore fired her before they could be filed. Respondent claims to have completed all the work covered by the retainer, but admitted that she had sent no itemized statement to Mr. Moore. Respondent testified that she returned Mr. Moore's paperwork by certified mail and is owed additional fees for the project.

The hearing panel found that respondent failed to complete the work for which she was retained and failed to maintain adequate communication with her client. The hearing panel found that respondent violated MRPC 1.3, 1.4, 1.15, 1.16, and 8.4 and Supreme Court Rule 207 in Count III of the formal complaint, case No. B5422.

## COUNT IV—B5426

Respondent was retained in October 1991 to redraft the will executed by the mother of Christina Peters, the fourth complainant. The complainant was told by respondent that because her mother's will was executed in New Jersey, it was not valid in Kansas. This was an incorrect statement of the law. The will was properly executed in New Jersey and did not require redrafting to be admissible in Kansas. Respondent was paid $610 to redraft the will and to handle the probate proceeding. The checks were endorsed and cashed by respondent. Respondent failed to redraft the will.

The complainant's mother died on November 5, 1991. Respondent agreed to file a petition for probate, for refusal of letters, or for intestate administration. The complainant contacted respondent on numerous occasions to find out when the case was set for hearing. Respondent advised the complainant that the matter had been set for hearing in the district court of Johnson

County, Kansas, on March 4, 1992, at 10:00 a.m. Respondent also informed the complainant that it was unnecessary for the complainant to attend court. The complainant went to the courthouse to attend the court proceeding. The complainant was told by court personnel that no hearing had been scheduled and that no pleadings on the estate of her mother had been filed.

On March 5, 1992, the complainant wrote a letter to respondent terminating respondent's services. The complainant left the letter at respondent's office with respondent's secretary. In the letter, the complainant requested the return of her file, the original will, and the fee she had paid respondent. Respondent did not return the items requested. The complainant retained new counsel, Edward J. White, to assist her in the probate of her mother's estate. Mr. White filed a petition for refusal of letters in Johnson County District Court. That petition was granted. Mr. White made a written request to respondent to return the original will. Respondent did not comply with that request.

Respondent testified that she prepared a living will and a trust agreement for Ms. Peters but that the documents were of no use since Ms. Peters' mother died a week after respondent was retained. Respondent also testified she needed time to research whether the self-proving clause in the New Jersey will was valid under Kansas law and that she needed paperwork from the client proving that Ms. Peters had been lawfully adopted by the deceased. Respondent did not receive such evidence from her clients. Respondent admitted that she prepared no itemized statement for her services and that the clients might be due a small refund for fees. Respondent further admitted receiving a certified letter from Ms. Peters requesting a refund and return of her papers.

Respondent did not competently handle the will and estate matter, failed to communicate with the complainant, failed to handle the matter in a timely fashion, misled the court about the status of the case, and failed to return the complainant's file and retainer upon request. The hearing panel found that respondent violated MRPC 1.1, 1.3, 1.4, 1.15, 1.16, 3.2, and 8.4 and Supreme Court Rule 207 in Count IV of the formal complaint, case No. B5426.

## COUNT V—B5430

On August 7, 1991, respondent was retained by Roosevelt and Charles Etta Hunter to prepare and file for them a petition in bankruptcy under Chapter 13. The complainants requested this action be taken because their Jackson County, Missouri, home was threatened by proceedings for sale under a deed of trust which was in default. Respondent agreed to prepare the bankruptcy papers, and the Hunters paid respondent $250 as an initial payment on a $600 fee she requested. Shortly thereafter, the Hunters went to respondent's office and gave her the information requested for the preparation of the bankruptcy forms. While at the office, the complainants signed a Chapter 13 petition form in blank without dating their signatures. Respondent did not possess a license to practice law in Missouri where the Hunters lived, their home was located, and the bankruptcy petition was to be filed.

On September 20, 1991, the Hunters received a letter from the attorneys who represented the holder of the deed of trust. The letter demanded payment of $47,179.64. The complainants took the letter to respondent's office. Respondent told the complainants that she needed to know the date of the proposed sale in order to file certain papers in the bankruptcy proceedings. She also told the complainants that the bankruptcy had been filed that day. On October 14, 1991, the complainants paid respondent an additional $150 in fees.

On October 30, 1991, the complainants received a certified letter from the attorneys representing the holder of the deed of trust. That letter advised the complainants that their house would be sold under the deed of trust on December 2, 1991. The complainants contacted respondent's office and left a message on her answering machine. They subsequently spoke to respondent's secretary, who instructed them to mail a letter to respondent's office. The letter was mailed to respondent on November 5, 1991.

On or about November 14, 1991, the complainants contacted respondent. The complainants were again told by respondent that the bankruptcy proceedings had been filed, but that it took several weeks for the bankruptcy court to issue paperwork for a Chapter

13 filing. Respondent told the complainants that she would contact the Missouri attorneys who had filed the bankruptcy pleadings and that she would call them back. Respondent did not call.

On December 2, 1991, at 5:30 p.m., respondent took the complainants' bankruptcy petition to Brenda S. Watkins, a Missouri attorney. The trustee's sale of the complainants' home had previously been conducted. Respondent told Ms. Watkins that she needed her help as local counsel until she could secure the appearance in the bankruptcy proceedings of a friend of hers who was a Missouri attorney, but who was out of town for a few days. Ms. Watkins signed the petition as counsel for the Hunters at respondent's request.

The petition was filed on December 3, 1991, at 9:30 a.m. The petition did not list the foreclosure sale of the Hunters' home in the statement of financial affairs, although it did list the holder of the deed of trust as a secured creditor. The complainants' home had been sold by the trustee under the deed of trust before the bankruptcy petition was filed. No order was sought in the bankruptcy proceedings to stay the foreclosure of the complainants' residence. No effort was made to redeem the property at the sale. The bankruptcy proceedings were dismissed on January 15, 1992, for failure to file the Chapter 13 plan as scheduled.

The complainants notified Bankruptcy Judge Frank W. Koger of respondent's actions in their bankruptcy case. Judge Koger conducted an inquiry on March 3, 1992. The judge concluded that the Missouri lawyer who had signed the complainants' bankruptcy petition, Ms. Watkins, was not responsible for failure to diligently prosecute the bankruptcy proceedings. The judge advised the Hunters in a letter dated March 30, 1992, that he would probably take action to bar respondent from further practice in the court.

The hearing panel found that respondent violated MRPC 1.1, 1.3, 1.4, 1.15, and 8.4 and Supreme Court Rule 207 in Count V of the formal complaint, case No. B5430. It was the unanimous recommendation of the hearing panel that respondent be disbarred. A citation was mailed to respondent directing her to indicate whether she wished to file any exceptions to the hearing panel report. That citation was returned marked unclaimed.

The court, having considered the record herein and the report of the hearing panel, concurs in the findings, conclusions, and recommendations of the panel.

IT IS THEREFORE ORDERED that Mary Catherine Jackson be and she is hereby disbarred from the practice of law in the State of Kansas and her license and privilege to practice law are hereby revoked.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Mary Catherine Jackson from the roll of attorneys licensed to practice law in the State of Kansas and that respondent forthwith comply with Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187).

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports and that the costs herein be assessed to the respondent.